Daniel, J.
 

 If the paper writing in this case was witnessed, which the answer does not deny, it passed the title of the slave from .the donor, by force of -the Act of 1806, (Rev. St. c. 37, s.
 
 17,) except
 
 that
 
 the ceremony of
 
 registration was required, to give it full effect’; and this title enured to the husband, at least for life, (as remainders in slaves created by deed or writing after a life estate are good. Rev. St. c.
 
 37,
 
 s. 22,) unless the husband dissented therefrom; and his possession for twelve years is evidence that he did assent. 1 Prest. Touch. 142. If a bond, note, or bill, be given to the wife,.or to the husband and wife, during coverture, the legal title vests in the husband on his assent, and he may sue alone or he may elect to join his wife. 2 Leigh’s N. P. 1109, and the authorities there cited. The husband, being entitled to the instrument, could have had it proved and registered, under the Acts of Assembly giving further time for registering deeds, writings, &c., and then the husband’s inchoate title would have been complete, at least for his life. The wife had no power to re-deliver the paper writing to the donor. But it is said, if the facts were so, Ashcraft would still have been but a trustee for the separate use of his wife and children; and the slaves would not have been liable to be taken in execution for his debts. If there was no doubt left upon the mind of the Court, that the paper writing contained that which the defendant in his answer says it contained, and contained that, so expressed as to deprive the husband of any beneficial interest in the slave conveyed, we should certainly hold that the plaintiff was not entitled to the interference of a Court of Equity in his behalf. But the question in this case is, whether Ashcraft took as-a trustee or in his own right. And the answer of the defendant appears to us to be
 
 *28
 
 illusory, and to want frankness, candor and precision. The defendant admits that he took back the paper in 1837. If h were such as he states it, it might operate materially against the plaintiff or the creditors of Ashcraft. There was a strong inducement, therefore, for him to preserve the paper, if it was written as he would have us to suppose. But, although he speaks with some degree of positiveness as to his
 
 intent
 
 in executing the instrument, he is vague and uncertain as .to-the language of the instrument, which declares that intent. He describes it as having been made “ to that effect,” and “ he thinks” it was to her separate use for life, and after-wards to her children. His answer is equally unsatisfactory as to the destruction of the instrument. His words are, « he thinks it is destroyed,”
 
 “
 
 he has it not in his possession,” &c. Spoliation is always looked upon by a Court of Justice with suspicion. The defendant, to be sure, was not interrogated by the bill, (as he yet may be,) whether there was a subscribing witness, and who he was ? nor in whose hands the defendant placed the paper after he got it back in 1837. He, however, is particularly cautious in not giving us any information on these points. Under all the circumstances, we think the Judge was right in directing an injunction until the hearing.
 

 This opinion must be certified to the Court of Equity of Anson County, with instructions to proceed according to the same; and judgment must be entered for the plaintiff for the costs of this Court.
 

 Per Curiam. Ordered and decreed accordingly.